JAMES DE SAPIO, Respondent, v. HERMAN S. KOHLMEYER, SR., et al., Appellants.

First Department, November 29, 1973.

John Condon Young of counsel (Smith, Griffin & Young, attorneys), for appellants.

Bernard Meyerson of counsel (Harry Evans, attorney), for respondent.

STEVENS, P. J. This is an action to recover compensatory and punitive damages for alleged defamation. In November, 1970 plaintiff was hired as a block trader by defendant Kohlmeyer, a member of the New York and American Stock Exchanges.

He was dismissed on or about April 16, 1971 allegedly because certain legal judgments existed against him.

At the time of his employment by Kohlmeyer, plaintiff executed the New York Stock Exchange's "Application for Approval of Employment" and the American Stock Exchange's "Application for Registration of Employee." Both documents contained arbitration clauses. The application for the New York Stock Exchange read as follows: "I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and Rules then obtaining of the New York Stock Exchange."

The application for the American Stock Exchange read in part as follows: "I agree that any controversy between me and any member or member organization of the American Stock Exchange arising out of my employment or the termination of my employment by and with such member or member organization or any successor thereto shall be settled by arbitration".

In January, 1972, about nine months after he was discharged by Kohlmeyer, plaintiff sought employment with another member of both the New York and American Stock Exchanges. In connection with this new application for employment an investigator interviewed a partner in Kohlmeyer. It is during that conversation that the slander and defamation was allegedly committed. It is alleged that said defendant defamed plaintiff by stating that he stole money from the company and by questioning his morals.

After this action was begun defendants-appellants moved for a stay on the grounds that an arbitration agreement existed. The court below denied a stay on the ground that the agreement provided for arbitration of "matters normally arising out of an employment relationship, such as wages, conditions of employment, etc., and by no reasonable interpretation could it have been intended to include the matter set forth in the instant litigation."

The issue here is whether there was an agreement to arbitrate in existence at the time of the alleged defamatory statements even though plaintiff had left the defendant's employ some months before the alleged defamation. The controversy here did not arise until the allegedly defamatory utterances were made some months after plaintiff left the employ of defendant

Kohlmeyer. A fair reading of the aforesaid applications indicates that neither plaintiff nor the defendants agreed to indefinite arbitration after plaintiff left his employment. In short the agreements to arbitrate had already terminated at the time these alleged defamatory utterances were made.

Thus in paragraph k of the application to the New York Stock Exchange plaintiff agreed that for 30 days following termination of his employment he would remain subject to any disciplinary charges or penalties growing out of the period of his employ. The language is as follows: '' (k) If the New York Stock Exchange, during the period of 30 days immediately following termination of my employment, gives me written notice that the Exchange is making inquiry into any specified matter or matters occurring prior to termination of such employment, I agree that I will thereafter comply with any request of the Exchange for me to appear and testify, submit records, respond to written requests, attend hearings, and accept disciplinary charges or penalties with respect to the matter or matters specified in such notice in every respect in conformance with the Constitution and Rules and practices of the Exchange in the same manner and to the same extent as required to do if I had remained an employee.''

The registration agreement with the American Stock Exchange is even clearer than that with the New York Stock Exchange. The arbitration provision there is contained in Item 30 of the agreement. At the end of Item 30 is a provision which limits the applicability of Item 30 to the time of plaintiff's actual employment. It reads: '' Further, in consideration of the American Stock Exchange's approving my application, I agree that the covenants made by me in this Item 30 shall continue in full force and effect during my employment by the applicant member or member organization, and also during my employment by any successor or successors thereto.''

Thus the New York Stock Exchange agreement contained a provision indicating that it would terminate 30 days after plaintiff left his employment unless he received notice of a pending investigation from his employer. The agreement with the American Stock Exchange indicated that it would terminate at the time defendant left his employment.

*Matter of Exercycle Corp. (Maratta)* (9 N Y 2d 329) does not require arbitration here. There petitioner and respondent entered into an employment agreement containing an arbitration clause. A dispute arose when the employer-corporation interpreted a letter from the employee as a letter of resignation,

The employee sought arbitration, relying on a provision in the employment agreement requiring arbitration of any dispute " arising out of or in connection with " the employment. The employer sought a stay of arbitration. Among its arguments, the employer contended that the agreement to arbitrate had ended. The court rejected this argument because the question of whether the agreement had ended was a factual one, turning on the alleged letter of resignation and the employee's conduct.

The factors which distinguish that case from this include the fact that the termination of employment was in dispute and the matter was clearly covered by the arbitration agreement.

Accordingly, the order entered April 5, 1973 in the Supreme Court, New York County should be affirmed with costs.

McGIVERN, J. (dissenting). I would reverse on the facts and the law and grant the motion, staying the action against Kohlmeyer based on alleged libel and slander, on the grounds that the plaintiff herein had previously agreed to submit to arbitration any controversy between himself (plaintiff) and Kohlmeyer arising out of his employment by Kohlmeyer or the termination of that employment.

I am unable to appreciate how the instant case can be withdrawn from the umbrella of *Matter of Exercycle Corp. (Maratta)* (9 N Y 2d 329) reversing the Appellate Division, wherein the Court of Appeals declared: " Once it be ascertained that the parties broadly agreed to arbitrate a dispute ' arising out of or in connection with ' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances."

Furthermore, the factual situation here is not dissimilar from that found in *Matter of Ghiron (Mayr)* (19 A D 2d 54) wherein this court held that even when an action in slander had been commenced, based on utterances allegedly made concerning the finances of a Stock Exchange firm, and made to a firm customer, the underlying action should be stayed pending arbitration. This bench held: " While the words spoken are in dispute, it is undisputed that they were spoken by defendant while engaged in his duties as a representative or employee of respondents and in connection with their business. As such, the controversy arises out of the business of the respondents and the employment of petitioner." Here, the words spoken related to the employment of plaintiff during the period he was an employee of Kohlmeyer, and if it had not been for

this previous employment the occasion for the allegedly slanderous matter would never have arisen.

The conclusion of the majority opinion that the agreements with the two stock exchanges terminated with the end of plaintiff's employment, or 30 days thereafter, represents an over-interpretation of the agreements, and is so without merit that it is not specifically relied upon or even advanced by the respondent. Paragraph k of the New York Stock Exchange agreement merely held the employee amenable to disciplinary strictures 30 days after the termination of his employment; and item 30 of the American Stock Exchange agreement stated that the covenants were equally available to the successors of plaintiff's employer. The majority overlook the plaintiff's own statement of the question: "1. Plaintiff having worked, at one time, for appellants under an agreement which required arbitration of disputes arising out of my employment". Furthermore, the ultimate interpretation of employment agreements is for the arbitrator. (*Matter of Ghiron* [*Mayr*], 19 A D 2d 54; *Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 334.)

Lastly, this bench was recently reversed in *Matter of British Overseas Airways Corp.* v. *International Assn. of Machinists & Aerospace Workers, AFL-CIO* (32 N Y 2d 823) wherein the majority of this court held that the arbitrator had exceeded his authority; the minority view to the contrary. The Court of Appeals reversed on the dissenting opinion at the Appellate Division, and in this latter opinion we find the following: "As very recently stated: 'The very broad limits of arbitrability envisioned in CPLR 7501 as reflected in *Matter of Exercycle Corp.* (*Maratta*) (9 N Y 2d 329), forbid any judicial interference with disputes logically connected with the agreement. To say that such dispute must arise literally and directly out of the agreement in order to be arbitrable would be to turn back to a practice of judicial control clearly forsworn in *Exercycle.* * * *' Moreover, if there be any doubt as to whether the particular issue with relation to an employee grievance is embraced within a submission, the doubt should be ' "resolved in favor of coverage" ' (*Matter of Fitzgerald* [*Gen. Elec. Co.*], 23 A D 2d 288, 290, affd. 19 N Y 2d 325)."

NUNEZ and MURPHY, JJ., concur with STEVENS, P. J.; McGIVERN, J., dissents in an opinion, in which CAPOZZOLI, J., concurs.

Order, Supreme Court, New York County, entered on April 5, 1973, affirmed. Respondent shall recover of appellants $40 costs and disbursements of this appeal.